IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

HOPE D. HUFF,                          )
                                       )
                  Plaintiff,           )
                                       )
v.                                     )    Case No. CIV-10-285-KEW
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social                 )
Security Administration,               )
                                       )
                  Defendant.           )

## OPINION AND ORDER

Plaintiff Hope D. Huff (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."   42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on December 9, 1964 and was 44 years old at the time of the ALJ's decision.  Claimant completed her high school education.  Claimant worked in the past as a mail sorter, inspector at a rubber company, provider, and dietary aide.  Claimant alleges

an inability to work beginning May 20, 2007, due to limitations arising from problems with her lungs, heart, diabetes, and high blood pressure.

## Procedural History

On July 12, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 9, 2009, an administrative hearing was held before ALJ Lantz McClain in Tulsa, Oklahoma. On July 1, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On June 15, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") sufficient to perform a full range of sedentary work with limitations.

4

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to:  (1) perform a proper step five analysis; (2) properly consider medical source evidence; (3) perform a proper credibility evaluation; and (4) properly assess the impact of Claimant's obesity at step three.

## Step Five Evaluation

Claimant identifies several errors in a general contention that the ALJ's step five analysis was flawed.  In his decision, the ALJ determined Claimant suffered from the severe impairments of asthma, sleep apnea, diabetes mellitus, mild left ventricular hypertrophy and mid tricuspid regurgitation, hypertension, degenerative joint disease of the left elbow, obesity, and depression.  (Tr. 14).  He concluded Claimant retained the RFC to perform sedentary work except that she should avoid concentrated exposure to dust or fumes and be limited to simple, repetitive tasks, and incidental contact with the public.  (Tr. 16).

Claimant first challenges the precision of the hypothetical question that the ALJ posed to the vocational expert ("VE"). Claimant contends the ALJ should have included a restriction on reaching since he found degenerative joint disease in Claimant's left elbow to be a severe impairment.  This case points up a frequent problem which occurs in an ALJ's findings.  He found

5

Claimant's degenerative joint disease to constitute a severe impairment and then never mentions the condition or any limitations it might impose further within his decision. Once an ALJ finds an impairment to be severe at step two, the impairment must be considered in the RFC evaluation. Hargis v. Sullivan, 945 F.2d 1482, 1488 (10th Cir. 1991). This Court recognizes that the medical record indicates Claimant had good range of motion in the left elbow on November 28, 2006. (Tr. 190). This, then, begs the question as to why the condition was considered by the ALJ to be a severe impairment. Perhaps the ALJ considered the impairment in restricting Claimant to work at a sedentary level. The questioning of the VE, however, does not bear out that the degenerative joint disease condition in the left elbow was taken into consideration either by the ALJ or the VE in reaching the RFC. Claimant goes too far in suggesting that a particular restriction on reaching should have been introduced in the questioning of the VE - the medical evidence does not necessarily support this specific restriction. But the ALJ must account for the finding of this severe impairment without finding any restriction associated with it. On remand, the ALJ shall re-evaluate the severity of Claimant's degenerative joint disease and describe any limitations this condition, if found to be severe, might impose on Claimant's ability to work at a particular exertional level.

6

Claimant also suggests a restriction for a speech impediment should have been included in the questioning of the VE and in the RFC.  As the ALJ discussed in his decision, this condition was not medically determined.  The only reference by a medical source is a notation of "occasional stuttering" in a record from May 21, 2007. (Tr. 235).  One would expect more pervasive reference in the medical record if the condition were of sufficient severity to restrict her ability to communicate.  This Court finds no error in this omission.

### Medical Source Evidence

Claimant references a notation in a medical record from February 10, 2008 instructing Claimant to "pace activities; allow for periods of rest.  Advance activity as tolerated."  (Tr. 289). This record was developed in connection with Claimant's treatment for asthma.  The ALJ's decision references these medical records, concluding that the clinician's impression was "asthma, exacerbation."  (Tr. 19).  The ALJ does not reference this specific restriction on activities.  He does reference Claimant's testimony as to the need for a break to catch her breath.  In so doing, he concluded Claimant had moderate difficulties with concentration, persistence or pace.  (Tr. 15).  This Court does not find inconsistency between the ALJ's findings in this regard and the

notation by the clinician.

Claimant also asserts the ALJ found only mild restrictions in Claimant's activities of daily living while the Psychiatric Review Technique completed by an agency physician found moderate restrictions in activities of daily living.   (Tr. 15, 259). Defendant contends the agency physicians ultimate conclusions supported a finding of non-disability.  While this Court does not find error in the ALJ's analysis in this regard since he supported his finding of mild restriction with references to Claimant's activities of daily living brought into the record through Claimant's testimony, on remand, he should explain the specific basis for rejecting or making a finding inconsistent with the agency physician.

Claimant appears to find something nefarious in the exclusion by the Appeals Council of certain pages from the medical record based upon the fact they do not pertain to this Claimant.  He contends the experts and the ALJ may have relied upon this information in formulating their opinions and it was improper for the records to be omitted from the record.  Neither the experts nor the ALJ reference these pages in the record in reaching their opinions.  It is reasonable to presume they examined the pages with sufficient scrutiny to conclude them to be inapplicable to Claimant's case.  No error is attributable to the manner in which

the exclusion of these records were omitted form the record.

## Credibility Analysis

Claimant contends the ALJ failed to perform a proper analysis of Claimant's testimony in deeming it not credible.   The ALJ concluded Claimant's testimony was due "little probative weight." He based this rejection on the fact that she is "apparently" able to maintain a household with three minor children and a grandchild with the assistance of her 16 year old child to assist with household chores.   He found Claimant's assertions that she had trouble with her eyes in watching television and reading and that her hands tingle making it difficult to write were not established by the record.   (Tr. 18).

The ALJ appears to rest his credibility determination primarily upon his own opinion that "[m]aintaining a household and caring for children with limited support, can be quite demanding both physically and emotionally."   (Tr. 18).   Claimant clearly testified concerning the limitations she experiences in washing dishes and cooking based upon her breathing problems.   (Tr. 31). Little else was developed concerning the extent of her household chores and caring for the 17, 16 and 15 year old children.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not

just a conclusion in the guise of findings." <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. <u>Id</u>. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In order to reject Claimant's testimony on limitation, the ALJ should first inquire into the factual basis for the rejection. Simply concluding Claimant is not credible because, presumably in the ALJ's experience, maintaining a household and caring for children can be demanding does not form a firm foundation for the

10

rejection.   On remand, the ALJ shall establish the basis for rejection in the factual record before drawing unsupported conclusions.

### Obesity

Claimant asserts the ALJ should have considered her obesity at step three.   In his decision, the ALJ included obesity among Claimant's severe impairments.  (Tr. 14).  His sole discussion of the condition, however, consisted of a statement that "[a]lthough there is no section in the "Listing of Impairments" regarding obesity, per se, the undersigned ALJ has taken this severe impairment into consideration along with its potential risks, limitations, restrictions, and co-morbidities."  (Tr. 15).

An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition.  Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).  "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.  This is especially true of musculoskeletal, respiratory, and cardiovascular impairments."  Id. "Obesity in combination with

another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id.

Here, Claimant contends the ALJ should have considered her obesity in conjunction with her heart and pulmonary function. The ALJ did find Claimant's conditions of mild left ventricular hypertrophy and mid tricuspid regurgitation as severe impairments. (Tr. 14). As such is the case, he must "assess the effects of Claimant's obesity in conjunction with her [heart] problem and 'explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations.'" Baker v. Barnhart, 2003 WL 22905238, 14 (10th Cir.(Okla.)); Soc. Sec. R. 02-01p. On remand, the ALJ shall specifically discuss Claimant's obesity in conjunction with her cardiopulmonary severe impairments in light of the medical record.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent

with this Opinion and Order.

DATED this 21st day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE